Louis L. Friedman, J.
(orally). There are before me two proceedings brought by Edward H. Freiberger, as petitioner, as against Donald L. O’Toole and others, to invalidate purported nominations of Donald L. O’Toole as a candidate for the office of congressman in the 12th Congressional District. These are nominations of the Democratic party and the Liberal party.
It appears without question that one of the necessary parties to that proceeding is Donald L. O’Toole, since he is a person who would be directly affected by any determination made in the proceeding. The case of Matter of Rosenberg v. Gralla (296 N. Y. 623, affg. 271 App. Div. 752) is authority for the proposition that he is a necessary party.
In response to the proceeding this morning Donald O’Toole appeared specially by his attorney for the purpose of contesting the claimed service of the order to show cause which initiated this proceeding, or I should say the orders to show cause in the two proceedings. For the purpose of brevity, I am going to refer to both proceedings as one since the issues in both of them are exactly alike and since the question of service of both orders to show cause have been attacked by similar companion motions.
The motions made by Mr. O’Toole, appearing specially, also seek a dismissal of the proceedings on the ground that since he is a necessary party to the proceeding, and if the court should determine that he was not properly served, that the proceeding is defective because of his failure to be served as a party therein.
The evidence before the court shows affirmatively, that as a matter of fact, no copy of the order to show cause was ever received by Donald L. O’Toole. The evidence before me shows that in purported obedience to the direction contained in the order to show cause relative to the manner of service, the attorney for the petitioner went to the post office and there per *193 sonally delivered to the clerk in the post office, several envelopes, two of which contained the two orders to show cause, or at least copies of them, which are the subject matter of this proceeding. And that both such envelopes, properly postpaid in accordance with the request for the amount of postage made by the clerk, were addressed to Donald L. O’Toole, at 152 Prospect Park West, Brooklyn, New York.
The evidence further shows that the mailing was not what is known as ordinary mailing, but was a restricted mailing in that it was termed “ certified mail ” and that as such certified mail it could not be delivered by the postman unless and until somebody who lived at the address where the mail was to be delivered receipted for such mail.
The evidence further revealed that in addition to another receipt which the post office retained, that the attorney for the petitioner annexed to the letters an additional receipt and paid the requisite fee therefore so that he, too, would get a copy of the receipt which was signed for this mail and which would in addition thereto show the address where the mail was delivered.
The evidence before me shows that that mail was never delivered, but that an attempt of delivery was made and that because of the restriction which the attorney for the petitioner had placed upon the envelope to the effect that it was certified mail and therefore had to be signed for, the postman did not leave the letters in the letter box which bore the name, “ O’Toole,” at the address specified on the envelope. But instead returned the letters to the post office where they presently still are.
There is some evidence that the usual practice is to leave a notice in the letter box under such circumstances where mail is not delivered because there is no one home to receive it. But the assistant postmaster who testified before me today said that while that is the usual practice he doesn’t know whether the postman did or did not leave a notice. The fact, therefore, is undisputedly, that copies of these orders to show cause were never received by the named respondent, Donald L. O’Toole.
It is an elementary proposition that a person is entitled to know about a proceeding which is brought against him. While the order to show cause provided for service by mail, that did not mean that the attorney for the petitioner had a right to put something into the order to show cause which was not there, and that his mailing should be by some type of restricted mail. Service by mail means just what it says, and that is service by ordinary mail. If this paper had been served by ordinary mail, it would have wound up in the post-office box or at least in the *194 mail box of the named respondent where in due course he would have properly received it and been a proper party to this proceeding.
The evidence does show that in fact on or about the very time when it would be expected that he would receive such ordinary mail as a result of the mailing on May 11, 1956, he did receive other mail addressed to him at that address.
I am particularly impressed with the fact that this order to show cause was signed on the 10th of May, 1956, at about 4 o’clock in the afternoon and that for several hours thereafter, the attorney for the petitioner as well as the petitioner, himself, who is a lawyer, was either at the petitioner’s office or in the immediate vicinity thereof.
I am also impressed with the fact that some time late that evening at about 10:30 they did effect service upon the named respondent, Donald L. O’Toole, of a subpoena, and that such service was effected at a place which is no more than 5 or 10 minutes’ distance from Mr. Freiberger’s office.
I am also impressed with the fact that had the petitioner attempted to make personal service upon Mr. O’Toole that night, of an order to show cause which he already had at that time, that it could very easily have been done, since they were able to serve the subpoena. Since the petitioner elected to adopt the second alternative of service which the order to show cause gave him, he must be held strictly to a compliance with such service. And certainly he cannot be held to have complied with the method of service when it appears affirmatively that because of the restrictions which he, himself, put on the envelope, the mail was never delivered.
I have examined the case of Matter of Serri v. Heffernan (274 App. Div. 852, affd. 298 N. Y. 629), which is cited by the petitioner and it is easily distinguished. In that case, the order to show cause which was to be served, provided for leaving the papers with a person of proper age at the residence of the there named respondent, or in lieu thereof, and if personal service shall not be made and admittance to the residence obtained and a person of proper age there found to receive the papers, by affixing the same to the outer or other door of the premises and by mailing additional copies thereof.
In that case, the copies of the papers were affixed to the door of the residence of the respondents, and on the same day a copy was mailed. Even though the mailed copy did not reach the respondent until the 15th day which would ordinarily be one day beyond the 14-day statutory period, the court there held, *195 and I am included to agree, that that is good law, that the service was good, since a copy was actually at the residence of the respondent there, on the 14th day and the additional copy was mailed on the 14th day.
In the case of Matter of Ford v. Heffernan (N. Y. L. J., Aug. 24, 1949, p. 317, col. 2, affd. 275 App. Div. 999), which is cited in the memorandum submitted by the attorney for the petitioner, it appears there that that case is easily distinguished.
In that case, the order to show cause provided for service by mail on all the respondents who were named. Service was made by mailing copies through regular mail. In addition, the petitioner in that proceeding mailed to such respondents an additional copy by registered mail. Even though the respondents in that petition did not receive the registered mail in due course, but did receive it some time later, and in fact two of them refused to accept it, the court held that service was proper. I agree with that determination because the order to show cause merely provided for service by mail and since- service by mail was in fact made, the additional copy which was mailed by registered mail did not alter the fact that service had been made in the manner provided for by the order to show cause.
Our Court of Appeals in Matter of King v. Cohen (293 N. Y. 435, 439) held: “ that the use of registered mail is likely to result in a failure of timely delivery of notice of the proceeding.”
The evidence before me shows that while this was not registered mail, it was mail which was of a similar character, and that is certified mail, and not only was it ‘‘ likely to result in a failure of timely delivery ”, but it did actually result in no delivery of the mail.
In the case of Matter of Constantino (Cioffi) (286 N. Y. 681) the Court of Appeals held, as reported in the Cohen case (supra, p. 439) that the requirement of the Election Law as to notice to be given to a respondent in this type of a proceeding, “ calls for delivery of the instrument of notice not later than on the last day on which the proceeding may be commenced. ’’
In this case, the proof shows without question that there never was any delivery at all but only an attempted delivery which could not be fulfilled because of the restriction which had been placed upon the envelopes by the petitioner’s attorney.
Upon all the proof before me, I am going to sustain the traverse. I am going to hold that the service or the purported service of the order to show cause herein was not made as required by the order to show cause itself, and that service *196 was therefore never made upon the respondent, Donald L. O’Toole; that he is therefore not a served party to this proceeding since he was never served and therefore not a party at all except one who is named.
I am going to grant the motion to set aside the service. Now, the notice of motion also asks for additional relief and that is to dismiss the proceeding on the ground that he is, although a named party, not actually a party because of the nonservice. Since I have already held that there hasn’t been any service upon him, I am going to grant the motion to dismiss the proceeding. That, of course, applies to both proceedings which are before me at this time.
mr. fisher : And that ruling applies to the clients I represent, who have appeared in this proceeding but who have affirmatively alleged that if you don’t have jurisdiction over Donald O’Toole, then you have no jurisdiction over the subject matter.
court: Yes. I must dismiss the entire proceeding since all of the parties are not before the court.
(On reargument, May 31, 1956.)
This is an application which came on before me by order to show cause which I signed, wherein the petitioner in this proceeding has asked for leave to reargue the traverses and the petitioner’s motions for the orders requested, and if such reargument is granted, for the relief requested in the title of the proceeding and for other relief.
The matter came before me originally. I have permitted the petitioner and the respondent to argue at great length as to their respective contentions. I also permitted testimony for the purpose of ascertaining whether there was any proof which could be offered to sustain the contention of the petitioner. In my opinion at the time of the original hearing I pointed out that I was not going into the merits of the controversy between the parties, because that matter was not then before me. I further pointed out that the only question before me at that time was the one raised by the notice of special appearance interposed by Mr. Bosling in behalf of Mr. O’Toole, and that question was as to whether Mr. O’Toole had been served with the papers in the manner which Judge Brown had directed that he be served in the original order to show cause. At that time, as a result of a hearing which I conducted, it was definitely established that the papers which were to have been served upon Mr. O’Toole and which were attempted to be served upon him by mail, were in fact never delivered to him because they were at that time still reposing in the Van Brunt Street post *197 office. Since there was no proof before me to establish that Mr. O’Toole had in any way prevented the service by any act on his part or by the act of anyone in the apartment at 152 Prospect Park West, to which these letters were addressed, and since this proof before me further showed that the petitioner had not complied with the permission which Judge Brown had given to him — and that is to serve the papers by ordinary mail — but had instead served the papers by a restricted form of mail — which was the reason for their nondelivery — I sustained the traverse and held that there was improper service.
Thereafter, motions to dismiss the proceedings were made, because, even as the attorney for the petitioner admits here, Donald O’Toole is a necessary party to this sort of proceeding, and since I held he was not served, the parties were incomplete and of necessity the proceeding must fail. I therefore granted the motions.
Now, on the basis of papers before me and the proof before me, I see no reason why I should alter my opinion. I have permitted testimony at great length, and I have given the petitioner every opportunity to prove his contention. I suppose, in effect, I should say that I am granting reargument and taking additional proof because in effect that is what I have done, even though my original thought was not to grant reargument. I have read the brief submitted by the petitioner, and while some of the arguments in the brief are undoubtedly good law, those arguments do not pertain and don’t fit in with the facts in this case. For instance, I see in the brief on page three a statement that ‘‘ there is no proof as to the date he received the envelopes addressed to him.” Before I saw this brief, I myself raised that point, because despite the contention of Mr. Rosling to the effect that Mr. O’Toole had not been served, he did come into court two days ago and did have with him the very envelopes which apparently contained the papers in this proceeding. O'f course, if he received those envelopes at an earlier dáte, or at least sufficient time to appear on the hearing which took place before me on the 16th of May, then I would have held that it was good service, whether it was mailed in the manner directed or any other way. Now, there is proof before me given in the form not only of Mr. O’Toole’s testimony but also in the form of the last three exhibits, which are the salmon-colored registry receipt cards, and which showed that on the date when Mr. O’Toole contested the service he had not yet received these envelopes but actually received them only three days ago — which was May 28.
*198 The next statement that appears in the brief to the effect that the mail ‘‘ was refused by Mrs. Zager, ’’ is very interesting, if there were any proof to that effect. But there isn’t any in this case. There is evidence, of course, that it was mailed to Mr. O’Toole, but, as I pointed out in my previous opinion, that mailing was by a restricted form of mailing, which required a receipted card, and the proof before me now, given by the postman himsel'f, affirmatively shows that at no time was anybody ever told that there was mail for Mr. O’Toole in the form of these certified letters, and at no time did anybody respond to his buzzer, which indicated that somebody was wanted downstairs, and that the only notice that anybody might have gotten was in the form of a yellow slip, which, the postman says and which I believe, was left in the post-office box at 152 Prospect Park West on the 15th of May.
There is no proof as to whether that notice ever came to the attention of Mr. O’Toole, because there were three names on the letter box, but assuming, for the sake of argument, that it did come to Mr. O’Toole’s attention, counsel for the petitioner himself very readily conceded that there is no legal requirement, as distinguished from a possible moral requirement, that Mr. O’Toole go to the post office in response to such a notice and ask that the papers be given to him.
The petitioner further points out the Saffold case (219 App. Div. 865), about which I have previously commented, and I agree with that law, that if there were proof that Mr. O’Toole had refused to accept these certified pieces of mail, or if there were proof that he had frustrated their delivery or prevented their delivery, that would have been sufficient to constitute good service.
I am very much interested, of course, in the testimony of Mrs. Queeden, the daughter of Mr. O’Toole, and particularly her testimony as it relates to the first paragraph on the last page of her affidavit which is before me. When she originally testified, she said that she heard her father say that he knew that certain papers which were in a letter addressed to him were from the petitioner here and that he had instructed the post office to return them to the nearest post office to 152 Prospect Park West. I don’t want to characterize her testimony, but it appears to me affirmatively that when a daughter comes to court to testify against a father, and when, as appears in these moving papers, she voluntarily went to the office of the petitioner to volunteer her services against her own father, there must be a lot more to the thing than meets the eye. There *199 is undoubtedly a hatred there from the daughter to the father which may be the reason for her testifying as she did. I am not prepared to go into that, but I am very sceptical about her testimony and about the truthfulness of it. In any event, factually she is incorrect, because the testimony of the postman shows that these three pieces of registered mail or certified mail never got away from the Van Brunt Street post office, and so it was impossible for anyone to have been instructed at the 86th Street post office that the mail is to be returned to the Van Brunt Street post office, because it was at that latter post office that they were at all times.
It is unfortunate that the petitioner chose the method which he did for serving these papers, because it has restricted the court from going on with the main question which was raised in the petitioner’s original papers, and that is the question of residence. That, of course, is a technical requirement of the law, and the proceeding itself is technical, because the restriction as to address in this particular case would apply only as to the right to register and to vote and to enroll in a particular party. It would not be a detriment to the respondent from running as a candidate for Congress, because the only residence required under the Election Law would be that he reside in the State of New York, and then he is allowed to run for Congress in any district.
Under the circumstances, since petitioner himself chose a technical objection, I don’t think that petitioner is in a position to find fault with the respondent, who also put in a technical objection to this very proceeding, and while I was most anxious to hear the matter on the merits, I am obliged to comply with the law the same as everybody else, and since there is no service, I adhere to my previous decision about that feature; I am in no position to hear the main issue. Accordingly, the motion for reargument is granted, and upon reargument the court adheres to its previous determination.