OPINION OF THE COURT
Ira B. Harkavy, J.
On the evening of September 23, 1983, plaintiff returned to the place where he parked his 1981 Ford Thunderbird automobile. The car was missing and presumed stolen. The loss was reported to the police and the insurance company. In a stroke of rare good luck, the car was found by the New York City Police Department on September 24, 1983. Plaintiff received a notice from the police dated September 26, 1983 that pursuant to the Administrative Code of the City of New York the car was being “safeguarded at a private Rotation Tow facility licensed by the Police Department”, to wit, the defendant, Emerson Collision, Inc. The defendant Bridge Collision, Inc., used the same facilities, employees and for all practical purposes the two corporations were used interchangeably.
Both the plaintiff and defendant’s manager Vincent “Vinny” Tricarico agree that plaintiff visited defendant’s installation at the end of September, immediately after he received the notice from the police. Plaintiff remembers looking over the damage to his car, discussing the possibility of hidden damage, such as to the engine with Vinny, and advising Vinny that he would discuss repair of the car with him once the insurance claim is settled, which Vinny agreed to.
Plaintiff testified that he never visited defendant’s installation again, but that he had several telephone conversations with Vinny regarding the status of the insurance claim. It appears that the first offer from the insurance company did not contain *386 an offer for the engine damage and that the first offer was refused by the plaintiff. Plaintiff further testified that he finally settled the claim with his insurance company on or about March 1, 1984, for the sum of $2,096.51 less the $200 deductible. Upon receipt of payment from the insurance company, he called the defendants with the intention of discussing the repairs. After some discussion he was told that the car was no longer there. It had been sold by Bridge Collision, Inc., at an auctioneer’s sale on March 2, 1984, for a “garage keepers lien” pursuant to section 184 of the Lien Law on a claim of $861.67 for storage, $904.84 for repairs, $37.89 for towing and $100 for legal fees.
“Vinny” the manager for both defendants testified that he has a hazy recollection of meeting with the plaintiff several times to discuss the repairs to the car. He states that he remembers that plaintiff authorized the repair of the car “as per agreement with Ins. Co.” and that the insurance company verbally authorized the repairs. Defendant submitted into evidence an “Authorization to Repair” dated October 18, 1983, 2:30 p.m., purported to have been signed by the plaintiff. Plaintiff submitted specimens of his signature such as the registration of the car, credit cards, etc. The signatures presented by the plaintiff are completely different from the signature on the purported authorization. One does not have to be a handwriting expert to determine that the signature on the authorization is not plaintiff’s normal signature. Plaintiff never authorized the repairs. Even if plaintiff did authorize the repairs, the agreement with the insurance company was not made until March 1, 1984. As such, the claim for repairs on the notice of lien and sale dated February 15,1984 was erroneous. If the repairs were based on the first offer of the insurance company they were at best premature.
The auctioneer testified that he prepared the notice of lien and sale on February 15, 1984, swore to the truth of the statements therein as an agent of Bridge Collision, Inc., and mailed the notice to plaintiff and to the lienholder Ford Motor Credit Corp. by certified mail, return receipt requested, on February 15, 1984, in compliance with section 201 of the Lien Law. He received back the receipt from Ford Motor Credit on or about February 18,1984, and the unclaimed letter sent to the plaintiff after March 3, 1984. The letter had marked on it by the post office claim check No. 524674: first notice February 17; second notice February 22; return March 3. The certified letter was returned to Edward F. Fazio, unclaimed on or about March 3, 1984.
On March 2,1984, at 9:00 a.m. at the defendant’s premises the car was sold pursuant to the alleged lien for $1,000 to a principal of the defendants.
*387 Defendant did not introduce any evidence that it ever billed plaintiff for the storage, repairs, towing, etc., and that they ever informed plaintiff of the alleged debt. Plaintiff contends that the parties agreed to wait until the claim was settled to discuss the repairs and that if defendant was hired to make the repairs that all charges for storage and towing would be included in the repair costs. Plaintiff claims that he owed no moneys to defendants and that he never received any bills, invoices or notice of lien and sale.
Section 201 of the Lien Law provides
“§ 201. Notice of sale
“Before such sale is held the lienor shall serve a notice upon the owner * * * if such owner or person cannot with due diligence be found within such county * * * then such notice shall be served by mailing it to the owner at his last known place of residence, or to his last known post-office address or if the owner’s place of residence or post-office address is not known, then to the last known place of residence or last known post-office address of the person for whose account the same is then held personally. Any notice permitted herein to be served by mail shall be sent by certified mail, or by first-class mail if the lienor has obtained from the United States post office department a certificate of mailing.”
The auctioneer testified that he chose to mail the notice of lien and sale by certified mail, return receipt requested, in order that he have proof of receipt of the notice of lien and sale by the owner. He also testified that large numbers of letters sent this way are returned, and that he holds the sale whether the receipt is received or not. As stated by the Appellate Division, Second Department, in Matter of Butler v Gargiulo (77 AD2d 939) “Under these circumstances, we hold that the attempted service by certified mail, return receipt requested * * * was ineffectual, as the use of such mail is likely to result in a failure of timely delivery of notice of the proceeding (cf. Matter of King v Cohen, 293 NY 435; Matter ofFreiberger v O’Toole, 2 Misc 2d 191, affd 2 AD2d 678). It cannot be said that this mode of delivery was reasonably calculated to give timely notice to the necessary parties.”
Section 201 of the Lien Law permits service of the notice by certified mail. However, it does not call for a return receipt. The section of the law is very specific in that it also permits service by ordinary mail with a certificate of mailing. The request for a return receipt restricts the delivery of the letter. It is quite apparent to this court from hearing testimony regarding mail *388 ings that the best way to make sure that a document is not received is to send it by certified mail, return receipt requested. The best way to make sure a letter is received is to mail it at the post office and obtain a certificate of mailing. It should be noted that a certificate of mailing costs 40 cents while a certified letter return receipt requested costs $1.55. The only reason for the auctioneer to use the certified mail return receipt method is to help insure that the notice of lien and sale will not be received. To compound the problem, the return address on the certified letter was that of the auctioneer and not the defendants. It is possible that if plaintiff called the post office to find out who sent him a certified letter he would have picked it up quicker if he knew that it came from the people holding his car and not from a stranger.
Based upon the evidence produced, the court rules that the defendant failed to comply with section 201 of the Lien Law as to the means of mailing, in that it sent the notice certified mail, return receipt requested, rather than by certified mail. The court also finds that at the time the alleged notice was mailed there was no moneys due and owing to the defendants because no agreement had been reached at that time with the plaintiff’s insurance company. The court accepts plaintiff’s statements as more credible that an agreement as to repairs and other charges would be worked out after the insurance company and he came to an agreement.
Plaintiff submitted proof that the value of his car between January 1,1984 and February 15,1984 was $6,750 plus $556.88 sales tax making a total of $7,306.88. Plaintiff received $1,896.41 from his insurance company for repairs which were not made. Therefore plaintiff is entitled to the sum of $5,410.47 with interest from March 2,1984, plus costs and disbursements.